**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PHILIP FRAZIER** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **NO. 25-CV-4008** |
| | : | |
| **BETTIE DUBOSE, *et al.*,** | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J. AUGUST 24, 2026

Plaintiff Philip Frazier, a convicted prisoner currently incarcerated at SCI Phoenix, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights and state law claims. Currently before the Court is Frazier's Twelfth Amended Complaint, ("TAC") in which he asserts claims against SCI Phoenix employees Superintendent Sorber, an unidentified Medical Dispensary Supervisor, Unit Manager Strekoski, and Counselor Fioravanti. He also asserts claims against Bettie, Phyllis, and Camisha Dubose.[1] (*See* "TAC" (ECF No. 33)). For the reasons set forth, the Court will dismiss Frazier's constitutional claims against Bettie, Phyllis and Camisha Dubose, as well as his due process claim against Sorber with prejudice, and will dismiss his remaining constitutional claims without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(i). His state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. Frazier will be granted leave to amend his claims one last time.

---

[1] The identity of the Defendants is difficult to discern from the TAC because the caption identifies only Bettie Dubose, and the document does not include a section identifying the parties.

## I. PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS[2]

Based on the publicly available court summary reflecting the outcome in *Commonwealth v. Frazier*, CP-51-CR-506021-1983, Frazier is 85 years old and was sentenced to a term of life imprisonment on September 18, 1987, following conviction on charges of first-degree murder, rape, arson, and burglary. (*Id.*) The publicly available docket in *Commonwealth v. Frazier*, MC-51-CR-407681-1983 reflects that he has been confined at SCI Phoenix since approximately April 11, 2019. (*Id.*) Frazier commenced this action on July 29, 2025. (ECF No. 1.) He paid the applicable filing fee on April 6, 2026. (ECF No. 24.) By that time, he had filed five amended complaints in addition to his original Complaint. (*See* ECF Nos. 5, 16, 18, 21, and 23.) On April 7, 2026, the Court entered an Order granting Frazier leave to file a sixth amended complaint consolidating the claims included in his previous filings. (ECF No. 26.) The Court explained that an amended pleading superseded prior pleadings, that the Court could not accumulate allegations from superseded pleadings to understand a litigant's claims, and that piecemeal amendment and supplementation was not permitted. (*Id.* at n.1.) The Court instructed Frazier to identify all defendants in the caption of any sixth amended complaint and to include all allegations in the sixth amended complaint, without including references to past pleadings. (*Id.* at 2.) Since the filing of the Court's April 7, 2026 Order, Frazier has filed six additional Amended Complaints. (*See* ECF Nos. 27, 28, 29, 30, 31, and 33.) Under Rule 15(a)(2), a party may amend its pleading only with

[2] The factual allegations set forth in this Memorandum are taken from Frazier's TAC (ECF No. 33). The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Frazier's pleading will be corrected for clarity. The Court may also take judicial notice of prior court proceedings. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.") (collecting cases); *see also In re Ellerbe*, No. 21-3003, 2022 WL 444261, at *1 (3d Cir. Feb. 14, 2022) (*per curiam*) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings)).

the opposing party's written consent or the court's leave. The Court deems the TAC, as the most recently filed pleading, to be the operative pleading in the case, superseding all prior pleadings. The Court will consider only those allegations included in the TAC.

The TAC consists primarily of 63 handwritten pages, including five documents with captions titled "Amended Complaint." (TAC at 1, 13, 32, 44, 46.) In addition to allegations upon which he bases his claim, Frazier includes in the TAC documents including copies of screenshots, handwritten correspondence, completed grievance and inmate request forms, and an incomplete deed transfer. (*See, e.g.*, *id*. at 5, 12, 17, 18, 19.) The TAC is signed in three places. (*Id*. at 31, 38, 42.) The Court considers the entire submission to constitute the TAC.

Frazier's TAC is lengthy and repetitive. However, upon review, it appears that the bulk of the TAC relates to his claims that (1) individuals have seized ownership of his real property and the rental income he receives from that property, (2) he has been denied working hearing aids while incarcerated at SCI Phoenix, and (3) he has experienced interference with his legal mail. (*See* TAC.)

**1. Allegations Regarding Seizure of Real Property and Income**

Frazier alleges that he has owned real property at 229 W. Walnut Lane in Philadelphia for sixty years. On January 8, 2025, he learned of fraudulent activity engaged in by his private employees, namely, an effort to overtake ownership of the property and control of the income stream it generated. (*Id*. at 3, 21, 25, 33, 58.) He identifies the perpetrators of this effort as Phyllis Dubose, Betty Dubose, Camisha Dubose, Superintendent Sorber and other unidentified employees of SCI Phoenix. (*Id*. at 21, 23, 27, 36, 51, 56.) He further claims that Sorber "condoned the continuous nefarious activity (referring to alleged seizure of real property and rental income). (*Id*. at 33.)

With respect to control of the property during his incarceration, he alleges that on an unidentified date, he directed the caretakers of the real property (the Duboses) to list the property for sale to provide funds to Ms. Patricia Shelton (deceased) to fund her battle against cancer. (*Id*. at 38.) The Duboses refused to do so and cut off contact with Frazier. (*Id*. at 38.) Frazier claims that Sorber and his cohorts have plans to kill him to continue reaping a financial reward. (*Id*. at 36, 39, 53.) He also contends that Sorber will kill the Debose family after his own death to cover his tracks. (*Id*. at 54.) He seeks recovery of title to the property and lost rental income dating from January 8, 2025, the date on which he learned that ownership of the property had been seized. (*Id*. at 3, 12.)

Frazier includes several documents related to his real property claim. These include the first page of a deed dated October 25, 1988 transferring property from Philip Frazier, identified as the "husband and father of the hereinafter named Grantees" to Betty Frazier and Phyllis Dubose, described as "the wife and daughter of the hereinabove named Grantor," for the consideration of one dollar ($1.00). (*Id*. at 17.) Only the first page is provided, and there are no signatures on the document. A handwritten note appears on the document, "This is a forgery." (*Id*.) Also included is what appears to be a copy of a screenshot of a phila.gov entry reflecting the sale of 229 W. Walnut Lane on July 14, 2018, for three dollars ($3.00) and noting its assessed value was $551,000. (*Id*. at 19.) He also includes a completed Confiscated Items Receipt dated April 19, 2019, listing 2 deposit slips, 3 withdrawal slips, a copy of a mortgage satisfaction, an Agreement of Sale of Real Estate, and a copy of a birth certificate. (*Id*. at 18.) There is a handwritten note above the Confiscated Items Receipt stating, "This is a forgery." (*Id*.) Additionally, Frazier includes a handwritten letter to Gabriella Fenton, Esquire, Director of Policy and Legal Services, Philadelphia Department of Records, dated June 29, 2026, related to alleged efforts to seize ownership of

Frazier's real property and related rental income. (*Id*. at 9-11.) A response, describing procedures for using the services of the Lawyer Referral and Information Service, is also attached. (*Id*. at 12.)

**2. Allegations Regarding Failure to Provide Hearing Aids**

At the time he was transferred to SCI Phoenix, Frazier had been relying on hearing aids for sixty-five years. (*Id*. at 6.) Since his arrival at SCI Phoenix, Frazier has been requesting working hearing aids and inspection of his current hearing aids by an audiologist for six years, unsuccessfully. (*Id*. at 2, 4.) He alleges that Superintendent Sorber and an unnamed Medical Dispensary Supervisor have prevented him from obtaining new hearing aids that were approved on January 10, 2020. (*Id*. at 24, 35, 55.) He claims that his requests to obtain hearing aids at his own expense have been denied, and that although he paid a $500 fee to obtain new hearing aids, he did not receive them, and the funds have not been returned to him. (*Id*. at 6, 7, 24.)

Relatedly, Frazier alleges that in February 2026, a cell block inspection was conducted at SCI Phoenix. (*Id*. at 40.) Frazier was required to leave his cell while the search was conducted and left his working hearing aid on a table. (*Id*. at 40.) When he returned to his cell, a guard handed him his hearing aid, which was broken and appeared as if it had been stepped on. (*Id*. at 40, 48.) Frazier asked why the guard would step on his hearing aid but could not hear the response.[3] (*Id*. at 40.) He characterized the guard's manner as confrontational, and surmises that

---

[3] Frazier does not name the unidentified guard as a defendant and does not seek compensatory damages for loss of this hearing aid, thus it does not appear that he is asserting a due process claim based on its loss. Even if he were to do so, the claim would not be plausible. Negligent and unauthorized intentional deprivations of property "[do] not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process). A correctional facility's grievance procedure provides an adequate post deprivation remedy for intentional deprivations of property by correctional employees. *Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410, 422 (3d Cir. 2000) (holding that the Pennsylvania DOC grievance procedures provide adequate post-deprivation remedies). Accordingly, any due process claim Frazier might seek to pursue over his broken hearing aid would not be plausible because he had an adequate remedy for the deprivation of his property through the prison grievance system. *See, e.g.*, *Mbewe v. Delbalso*, No. 23-2054, 2024 WL 510500, at *3

he was being treated in a manner designed to provoke him to react with violence, so that he would be charged. (*Id*. at 40.) He attributes this conduct to Sorber's influence. (*Id*. at 40.)

In April and May of 2026, Frazier was told by three unidentified attendants that he would soon receive new hearing aids. However, on May 5, 2026, at Temple Hospital, he was informed that no new or properly repaired hearing aids were available. He was given one working hearing aid and left the three broken ones he possessed with the audiologist. (*Id*. at 2.) He claims that the ongoing failure to provide him with two new hearing aids amounts to deliberate indifference, which has caused him difficulty in communicating, particularly over the telephone. (*Id*. at 2, 24.)

Frazer includes a completed Inmate Grievance form dated June 22, 2026, in which he grieves the ongoing failure to provide him with new or properly repaired hearing aids. (*Id*. at 5.)

### 3. Allegations Regarding Interference with Legal Documents/Mail

Frazier alleges that between February 20 and 26, 2026, he was on the "Call Out Sheet." (*Id*. at 44.) During this time, library attendance was cancelled on one day, and on another, the library attendant destroyed all the legal papers Frazier provided to him for copying. (*Id*. at 44, 48.) Frazier claims this was done to provoke him to engage in physical contact with the library attendant, so he avoided doing so. (*Id*. at 44.)

---

(3d Cir. Feb. 9, 2024) (*per curiam*) (affirming dismissal of due process claim: "The prison grievance procedure provides an adequate post-deprivation remedy, and the existence of this post-deprivation remedy forecloses [plaintiff's] due process deprivation of property claim" (citation omitted)); *Ransome v. Longstreth*, No. 23-1726, 2023 WL 6122139, at *2 (3d Cir. Sept. 19, 2023) (*per curiam*) (existence of prison grievance process precluded due process claim, even where prisoner alleged violations of the grievance policy). "Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy." *Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (*per curiam*) (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3)); *see also Lawson v. Ferguson*, No. 22-2365, 2023 WL 2770820, at *3 n.3 (3d Cir. Apr. 4, 2023) (*per curiam*) ("Even if the prison's grievance procedures were inadequate to address Lawson's claims, state tort law could serve as an adequate post-deprivation remedy."); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).

Frazier also alleges that individuals are interfering with his outgoing mail. (*Id*. at 30.) Specifically, he claims Unit Manager Ms. Strekoski refused to send a filing fee to this court. (*Id*. at 33, 35, 44.) He includes a completed Inmate's Request to Staff Member dated February 20, 2026, asking that he be allowed to deliver his legal mail to the mailroom personally rather than submitting it through the cell-block box because of repeated instances in which mail was not delivered to the court. (*Id*. at 45.) Additionally, he alleges that Ms. Fioravanti also failed to send documents to the court, and Frazier assumes they have been influenced by Sorber. (*Id.* at 34, 35, 44.)

**4. Additional Allegations**

Frazier alleges that on March 27, 2025, he was sent to the Medical Dispensary and escorted to a back room where three men were present who stated they were seeking information about a grievance he filed on March 17, 2025. The subject of the grievance was forged documents in his cell, including a marriage license and related material. (*Id*. at 41.) The individuals stated they had no information regarding the alleged forgeries, appeared alarmed and frustrated, and eventually cut their interview short. (*Id*. at 41.) Frazier claims that they were not members of the Pennsylvania State Police as they stated and sent a grievance to Sorber asking that he investigate the interview. (*Id*.) In response, Sorber stated, "I don't know who interviewed you." (*Id*.)

On December 10, 2025, Frazier was told he would be transported to Temple Hospital to receive new hearing aids. (*Id*. at 51.) Instead, he was mistakenly transported to an eye clinic for cataract surgery. (*Id*. at 51.) He told the guards accompanying him to take him back to SCI Phoenix, where he told an attendant he was taken to the wrong place and demanded an in-person interview with a supervisor. (*Id*. at 51.) He does not state whether this request was granted.

Frazier alleges that on June 17, 2026, he was sent to the SCI Phoenix Medical Dispensary for a tooth extraction. (*Id*. at 8.) Though the dentist seemed unaware of the need for the extraction, and even asked Frazier which teeth he wanted pulled, one tooth was removed. (*Id*.) Afterward, Frazier felt that something was not right, but the dentist was not available to answer questions. (*Id*.)

Based on these allegations, the Court understands Frazier to assert claims for violations of his First and Eighth Amendment rights, and related state law claims. As relief, he requests transfer from SCI Phoenix[4], and investigation of treatment he has been subject to at SCI Phoenix. (*Id*. at 4.) He also requests new hearing aids and an examination performed by an audiologist not connected with SCI Phoenix or Temple Hospital. (*Id*. at 4, 7.) He also seeks recovery of his real property and an investigation into the conduct of individuals who seized control of that property. (*Id*. at 22-23, 50.) He also requests an Order placing all rental income in escrow pending a determination of ownership of the property. (*Id*. at 25.)

## II. STANDARD OF REVIEW

Although Frazier has paid the filing fee in full, because he is a prisoner the Court has the authority to screen his Amended Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or,

[4] The Court cannot provide this form of relief in a § 1983 action because it is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *see also Islaam v. Kubicki*, 838 F. App'x 657, 661 n.2 (3d Cir. 2020) (*per curiam*) (same); *Lane v. Tavares*, No. 14-991, 2016 WL 7118162, at *7 (M.D. Pa. Dec. 7, 2016) (same).

in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Frazier is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Moreover, "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## III. DISCUSSION

Frazier asserts claims based on alleged violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

### A. Federal Claims Against Dubose Family Members

Frazier asserts claims against Bettie, Phyllis, and Camisha Dubose, who are described as his "former employees" (*see* TAC at 23, 27, 30, 33), based on their participation in the alleged seizure of ownership of his real property and the rental income flowing from that property. (*Id*. at 21.) In support of his claim that these Defendants seized ownership of his property, he includes in the TAC a copy of an allegedly forged October 25, 1988, deed transferring the property from Frazier to Bettie and Phyllis for the sum of one dollar. (*See id*. at 17.) He also alleges that they planted a forged marriage certificate in his cell, to be used after his death. (*Id*. at 34.) Frazier describes their actions as "illicit/fraudulent/dangerous," (*id*.) but the exact nature of his claims against them is unclear.

To the extent that Frazier asserts that his constitutional rights have been violated by the seizure of his property by the Duboses, to pursue a claim under § 1983, he "must allege the

violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 48. "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). Frazier has not plausibly alleged that the Duboses are state actors.

Whether a defendant is acting under color of state law - *i.e.*, whether the defendant is a state actor - depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

"Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Frazier does not allege that the Duboses were state actors or acted under color of state law, nor has he alleged facts to support a plausible conclusion that their conduct satisfies any of the

foregoing tests, and nothing in the TAC suggests any factual or legal basis for concluding that they are state actors subject to liability under § 1983. The Court acknowledges that Frazier alleges that Superintendent Sorber was one of the "perpetrators" of this conduct, and that he "condoned" the alleged seizure of the property, but this is not sufficient to render the conduct of the Deboses state action. *See Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52; *Borrell.*, 870 F.3d at 160. For this reason, any constitutional claim asserted against the Deboses will be dismissed with prejudice.

**B. Federal Claims Against Sorber Related to Alleged Seizure of Property**

Frazier claims that Superintendent Sorber is one of the "perpetrators" of the scheme to seize his real property and the associated rental income stream. (TAC at 33.) He further claims that Sorber condoned the conduct engaged in by the Duboses. (*Id.*) The Court understands that Frazier seeks to assert a due process claim under the Fourteenth Amendment against Sorber.

Frazier describes the efforts to seize his real property and rental income as "illicit.," suggesting that he believes the conduct he describes is criminal in nature. However, Frazier does not identify any criminal statute he believes was violated by this behavior, and even had he done so, violation of criminal statutes does not generally give rise to a basis for civil liability. *See Brown v. City of Phila. Office of Hum. Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action.")

Additionally, as noted, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at; *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley*, 957 F.3d at 374 ("Personal involvement requires particular

'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Frazier does not allege that Sorber himself has seized title to the property, and the documents included with the TAC suggest that Bettie and Phyllis Dubose hold title to the property, but no one else. (*See* partial deed, TAC at 17, screenshot of property assessment and sale information related to 229 W. Walnut Lane, *id*. at 19).) He does not include allegations describing Sorber's participation in the Duboses' alleged plot to steal his property. He does not allege that Sorber derived income from the plan. In short, he has not plausibly alleged that Sorber was personally involved in any conduct giving rise to a violation of his constitutional rights.

Even if he had alleged Sorber's involvement, any due process claim based on the loss of the property would not be plausible. Negligent and unauthorized intentional deprivations of property "[do] not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Daniels*, 474 U.S. at 328 (negligent acts of officials causing unintentional loss of property do not violate due process). Several such remedies are available. A correctional facility's grievance procedure provides an adequate post deprivation remedy for intentional deprivations of property by correctional employees. *Tillman,* 221 F.3d at

422. "Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy." *Hernandez*, 771 F. App'x at 145 (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3)); *see also Lawson*, 2023 WL 2770820, at *3 n.3 ("Even if the prison's grievance procedures were inadequate to address Lawson's claims, state tort law could serve as an adequate post-deprivation remedy."); *Shakur*, 421 F. App'x at 135 (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, the due process claim against Sorber based on the loss of the real property is dismissed with prejudice.

### C. Eighth Amendment Claims

Frazier asserts claims against Defendant Sorber and an unnamed Medical Dispensary Supervisor based on their alleged refusal to assist him in procuring hearing aids that he alleges had been prescribed for many years.[5] (TAC at 2, 6, 7, 24, 35, 55.) He claims that as a result of the Defendants' conduct, he has difficulty communicating. (*Id*. at 24.) These claims are not plausible as pled.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical

---

[5] The Court notes that Frazier includes allegations in the TAC relating to two other instances involving medical care. In the first, he describes a tooth extraction that took place in June 2026. (TAC at 8.) Frazier alleges that the dentist seemed unaware of the need for the extraction and asked Frazier which teeth he wanted pulled before extracting one. (*Id.*) Following the extraction, Frazier felt that something was not right, but the dentist was not available to answer questions. (*Id.*) There are no further allegations relating to the extraction, Frazier does not identify the dentist as a Defendant, does not allege that any injury resulted from the extraction, and does not seek compensatory damages related to the incident. (*See* TAC.) The Court, therefore, does not construe the TAC as including an Eighth Amendment claim based on the extraction. Additionally, Frazier includes allegations in the TAC describing an incident during which he was mistakenly sent to an eye clinic for cataract surgery, rather than Temple Hospital for an appointment related to his hearing aids. (*Id*. at 51.) As with the tooth extraction, Frazier does not identify a Defendant responsible for this mistake, does not allege that any injury resulted from the error, and does not seek related compensatory damages. (*See* TAC.) As a result, the Court does not construe the TAC as including an Eighth Amendment claim based on this incident.

needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up). "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020), (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)). Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) *cert. denied*, 2026 WL 1718015 (U.S. June 15, 2026) (citation omitted). This standard is met when a delay or denial of medical care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm. *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026). "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)). [P]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less

efficacious treatment of the inmate's condition." *Palakovic*, 854 F.3d at 228 (quotations and citations omitted).

"If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Further, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Spruill*, 372 F.3d at 236.

The failure to provide basic corrective devices may amount to deliberate indifference to a serious medical need. *See Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980) (prison's alleged failure to give an inmate a wheelchair after he suffered a back injury was sufficient to support an Eighth Amendment claim); *Newman v. Alabama.* 503 F.2d 1320, 1331 (5th Cir. 1974) (noting that a prison's alleged failure to provide "eyeglasses and prosthetic devices" contributed to an Eighth Amendment claim). Several courts have held that hearing aids fall within the category of corrective devices, the deprivation of which could give rise to an Eighth Amendment claim. *See Large v. Washington Cnty. Det. Ctr.*, 915 F.2d 1564, at *2 (4th Cir. 1990) (*per curiam*) (unpublished table decision) (holding that "under appropriate circumstances, the refusal to supply a hearing aid to a convict could constitute deliberate indifference to a serious medical need"); *Gilmore v. Hodges*, 738 F.3d 266, 275-76 (11th Cir. 2013) (holding that the denial of a hearing aid to an inmate could form the basis of an Eighth Amendment claim because "[t]he ability to hear is a basic human need materially affecting daily activity and a substantial hearing impairment plainly

requires medical treatment by a physician"); *Cooper v. Johnson*, 255 F. App'x 891, 892 (5th Cir. 2007) (*per curiam*) (prisoner who suffered from tinnitus that was treatable with a hearing aid had adequately pleaded an Eighth Amendment claim when he was denied a hearing aid based on the prison's policy of not providing one if the inmate could hear out of one ear); *Wheeler v. Butler*, 209 F. App'x 14, 15 (2d Cir. 2006) (summary order) (holding that where a prisoner alleged that he had a severe hearing impairment that had been classified by the prison as a physical handicap, and the prison had confiscated and never returned his hearing aids, the district court erred in granting summary judgment to defendants on the prisoner's Eighth Amendment claim); *Marbet v. Pa. Dept. of Corrections*, No. 24-4724, 2025 WL 2627688, at *9 (E.D. Pa. Sept. 10, 2025) (dismissing without prejudice Eighth Amendment claim based on denial of hearing aids where Complaint did not include "any nonconclusory allegations to support a plausible inference that [Defendants] intentionally and indefinitely disregarded his request for replacement hearing aids," and where Plaintiff had requested compensatory damages, but not replacement hearing aids as damages)

Frazier alleges that he has relied on hearing aids for sixty-five years. He also alleges that he was prescribed new hearing aids in 2020, but that, despite several visits to an audiologist at Temple Hospital, he has not been provided with new hearing aids. He attributes this alleged deprivation to Superintendent Sorber and an unnamed Medical Dispensary Supervisor. He does not, however, describe any conduct engaged in by either of these individuals that contributed to the delay in his receipt of hearing aids.[6] As pled, the claim is conclusory and undeveloped and as such, not plausible as against either of these Defendants. The claim against Superintendent Sorber is not plausible for the additional reason that he is a non-medical Defendant and as such, is justified

[6] The Court also notes that Frazier references possessing at least one working hearing aid as recently as February 2026, when he claims it was damaged by a guard during a cell search. (TAC at 40.)

in believing that Frazier, who concededly was under the supervision of the Medical Dispensary Supervisor, was in capable hands. These claims will be dismissed without prejudice, and Frazier will be granted leave to amend them.

**D. Claims Based on Interference with Mail**

**1. Access to Court Claim**

In his TAC, Frazier describes an incident in which a library attendant destroyed legal papers which Frazier provided to him for copying. (TAC at 44.) Frazier does not name the library attendant as a defendant, does not identify any injury resulting from the loss of his legal papers, and does not seek compensatory damages based on this incident, yet he could be attempting to assert a First Amendment access to courts claim. However, as pled, the claim is not plausible. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (*per curiam*) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). "The Supreme Court has recognized that 'adequate law libraries' are a component of the right of access to the courts." *O'Connell v. Williams*, 241 F. App'x 55, 57 (3d Cir. 2007) (*per curiam*) (quoting *Bounds v. Smith,* 430 U.S. 817, 828 (1977)). Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. Accordingly, "prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement," *Monroe*, 536 F.3d at 205 (citing *Lewis*, 518 U.S. at 354-55), because the inability to litigate claims other than an attack on a sentence or conditions of confinements "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration," *Lewis*, 518 U.S. at 355; *see also*

*Shane v. Fauver*, 209 F. App'x 87, 89 (3d Cir. 2006) (*per curiam*) ("[T]he actual injury requirement is not met by every type of frustrated legal claim; constitutional protections are applied only to a prisoner's direct or collateral attack on his or her sentence, or challenges to prison conditions" (citing *Lewis*, 518 U.S. at 354-55)).

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis*, 518 U.S. at 350). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.*; *cf. Prater v. City of Philadelphia*, 542 F. App'x 135, 137 (3d Cir. 2013) (*per curiam*) (affirming denial of access-to-courts claim where the pretrial detainee had "not offered any other explanation of how his inability to access the library affected his criminal proceedings").

"Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they lost a chance to pursue a nonfrivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Rivera v. Monko*, 37 F.4th 909, 915

(3d Cir. 2022) (cleaned up) (quoting *Monroe*, 536 F.3d at 205). The only legal action Frazier refers to in the TAC is the instant action, which he is currently actively litigating, thus he cannot allege the loss of this claim as an actual injury to support a plausible First Amendment claim. As such, any First Amendment access to courts claim he may seek to pursue based on the incident described is not plausible and will be dismissed.

**2. Interference with Legal Mail**

Frazier alleges that Ms. Strekoski and Ms. Fioravanti interfered with his outgoing mail. Specifically, he alleges that they refused to send mail to this Court and refused to confirm that Frazier's filing fee had been mailed to the Court. (TAC at 35.) The Court understands Frazier to be asserting a First Amendment claim based on this alleged interference. However, this claim is not plausible as pled.

"[P]risoners have protected First Amendment interests in both sending and receiving mail." *Caldwell v. Beard*, 305 F. App'x 1, 4 (3d Cir. 2008) (*per curiam*) (first citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989); then citing *Turner v. Safley*, 482 U.S. 78, (1987)). However, "these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh*, 490 U.S. at 407 (quoting *Turner*, 482 U.S. at 85). To allege a plausible interference with legal mail claim, a plaintiff must allege that the interference was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech."). "[A] single instance is usually not enough." *Gibson v. Erickson*, 830 F. App'x 372, 373 (3d Cir. 2020) (*per curiam*) (citing, *inter alia*, *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003)); *see also Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (*per curiam*) ("[T]he District Court correctly determined

that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation." (citing, *inter alia*, *Davis,* 320 F.3d at 351)). Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails. *Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir. 2006).

It is not clear from the TAC whether Defendants Strekoski and Fioravanti interfered with Frazier's outgoing mail on more than one occasion, or whether he is describing the same incident repeatedly. It is also not clear whether his primary objection is that they interfered with his outgoing mail or that they did not advise him of the status of his mailings to this Court. In any event, Frazer does not allege facts describing a pattern or practice of interference with legal mail and, accordingly, has not stated a plausible First Amendment claim. Also, the Court received the filing fee Frazier asked to be mailed. (ECF No. 24.) The claims against Strekoski and Fioravanti will be dismissed. Because the Court cannot state that Frazier can never successfully state a plausible First Amendment claim, these claims will be dismissed without prejudice and Frazier will be granted leave to amend them if he can cure the defects in the TAC identified by the Court.

**D. State Law Claims**

It is possible that, by demanding a determination of ownership of the real property at issue in this case, Frazier seeks to pursue a state court quiet title action. However, having dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claim Frazier intends to pursue. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020). Frazier does not allege the citizenship of the parties and does not provide addresses for them, either. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. Any state law claims Frazier seeks to pursue will be dismissed without prejudice for lack of subject matter jurisdiction. Frazier will be granted leave to amend these claims to establish the existence of diversity jurisdiction, if he can do so.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Frazier's constitutional claims against Bettie, Phyllis, and Camisha Dubose, as well as his due process claim against Sorber with

prejudice, and will dismiss the remainder of his constitutional claims without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(i). Any state law claims Frazier seeks to assert will be dismissed for lack of subject matter jurisdiction. Frazier will be granted leave to file a thirteenth amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002).

An appropriate Order follows.

*NITZA I. QUIÑONES ALEJANDRO, J.*